[Cite as *State v. Perry*, 2011-Ohio-274.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Julie A. Edwards, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2010-CA-00185 |
| WILLIAM DOUGLAS PERRY | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal appeal from the Stark County Court of Common Pleas, Case No. 2009-CR-2062

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    January 24, 2011

APPEARANCES:


For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
BY: RENEE M. WATSON
110 Central Plaza S., Ste. 510
Canton, OH 44702

For Defendant-Appellant

WILLIAM DOUGLAS PERRY PRO SE
No. A573-847
Mansfield Correctional Institution
Box 788
Mansfield, OH 44901

*Gwin, P.J.*

{¶1} Defendant-appellant William Douglas Perry appeals from the June 14, 2010, Judgment Entry of the Stark County Court of Common Pleas overruling his Petition for Post Conviction Relief. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On December 9, 2008 appellant was indicted on two counts of aggravated murder, each with a death specification, one count of aggravated robbery, one count of aggravated burglary, one count of tampering with evidence and one count of gross abuse of a corpse.

{¶3} On October 15, 2009, with the assistance of his two death-penalty qualified attorneys, appellant entered a negotiated plea and agreed upon sentence. He signed a Crim.R. 11 (C) and (F) plea form, which was attached to and incorporated as part of the sentencing journal entry filed October 30, 2009. The form outlines the charges against appellant, the penalties involved and the effect of entering into an agreed upon plea and sentence.

{¶4} Before a three-judge panel, appellant acknowledged that he wished to enter a negotiated plea, that he understood the effects of a plea and the rights he was waiving by entering a plea. He further indicated that other than the promises outlined in the negotiated plea, no threats or other promises had been made in order to secure his pleas of guilty. Additionally, appellant acknowledged that he understood that by entering a negotiated plea, he was waiving his rights to appeal all pre-trial motions and any sentence imposed. Finally, appellant indicated that he had confidence in his lawyers and that they had been diligent and effective in their representation of him.

After appellant entered pleas of guilty to each count of the indictment, the state, pursuant to agreement with appellant and his attorneys, entered onto the record the stipulated facts and exhibits.  Appellant presented no evidence.

{¶5}   After retiring and deliberating, the three judge panel found appellant guilty as charged.   During the subsequent sentencing hearing, pursuant to the agreement between appellant and the state, the panel merged the two counts of aggravated murder and death specifications and sentenced appellant to life imprisonment without parole.   He was further sentenced to 10 years for aggravated robbery, 10 years of aggravated burglary, 5 years for tampering with evidence and 12 months for gross abuse of a corpse.   Appellant was ordered to serve the sentences concurrently for a total term of imprisonment of life without parole eligibility.

{¶6}   On April 20, 2010, appellant filed a motion for delayed appeal and a motion for appointment of counsel and transcript at State's expense.  On May 7, 2010, this Court denied appellant's motion for failure to state an adequate reason for delay.

{¶7}   On June 1, 2010, appellant filed a petition for post-conviction relief.  In his motion, appellant claimed that his conviction and sentence must be set aside because his trial counsel was ineffective and his indictment was defective.  The trial court denied appellant's motion without a hearing on June 14, 2010.

{¶8}   Appellant now appeals the trial court's denial of his motion for post-conviction relief, raising the following two (2) assignments of error for our consideration:

{¶9}   "I. MR. PERRY RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN THAT COUNSEL FAILED TO ARGUE THE INSUFFICIENT INDICTMENT(S) THAT FAILED TO CHARGE AN OFFENSE, AND COERCED MR. PERRY TO PLEAD

GUILTY TO ALL CHARGES WHILE UNDER THE INFLUENCE OF PRESCRIPTION, MIND ALTERING DRUGS IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION.

**{¶10}** "II. THE INDICTMENTS IN COUNTS 1-2-3 AND 4 FAIL TO CHARGE AN OFFENSE AS THEY HAVE OMITTED ESSENTIAL ELEMENTS, FAILED TO INVOKE THE COURTS JURISDICTION, VIOLATING MR. PERRY'S RIGHTS TO DUE PROCESS PURSUANT TO THE FOURTH, FIFTH , FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION."

Standard of Review

**{¶11}** R.C. 2953.21(A) states, in part, as follows: "(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief".

**{¶12}** A petition for post-conviction relief is a means to reach constitutional issues that would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. *State v. Murphy* (Dec. 26, 2000), Franklin App. No. 00AP-233. Although designed to address claimed constitutional violations, the post-conviction relief process is a civil collateral

attack on a criminal judgment, not an appeal of that judgment. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905, 1999-Ohio-102; *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 693 N.E.2d 67, 1994-Ohio-111. A petition for post-conviction relief, thus, does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Jackson* (1980), 64 Ohio St.2d 107, 110, 413 N.E.2d 819. *State v. Lewis*, Stark App. No. 2007CA00358, 2008-Ohio-3113 at ¶8.

### A. Right to Evidentiary Hearing.

{¶13} R.C. 2953.21 does not expressly mandate a hearing for every post-conviction relief petition; therefore, a hearing is not automatically required. In determining whether a hearing is required, the Ohio Supreme Court in *State v. Jackson*, supra stated the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits, and the files and records of the case.

{¶14} As the Supreme Court further explained in *Jackson,* supra*,* "[b]road assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction relief petitions." 64 Ohio St.2d at 111, 413 N.E.2d at 822. Rather, a petitioner must submit evidentiary documents containing sufficient operative facts to support his claim before an evidentiary hearing will be granted. Accordingly, "a trial court properly denies a defendant's petition for post conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient

operative facts to establish substantive grounds for relief." *Calhoun,* 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

{¶15} In *State v. Phillips,* 9th Dist. No. 20692, 2002-Ohio-823, the court noted that the evidence submitted in support of the petition, "'must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of [*State v. Perry* (1967), 10 Ohio St.2d 175] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.' (Citation omitted.); *State v. Lawson* (1995), 103 Ohio App.3d 307, 315, 659 N.E.2d 362. Thus, the evidence must not be merely cumulative of or alternative to evidence presented at trial. *State v. Combs* (1994), 100 Ohio App.3d 90, 98, 652 N.E.2d 205." *State v. Phillips,* supra at *3.

{¶16} In order for an indigent petitioner to be entitled to an evidentiary hearing in a post conviction relief proceeding on a claim that he was denied effective assistance of counsel, the two-part *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052 is to be applied. *Hill v. Lockhart* (1985), 474 U.S. 52, 58, 106 S.Ct. 366; *State v. Lytle* (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 497-498, 358 N.E.2d 623, 626-627*, vacated in part (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.*; *State v. Bradley* (1989), 42 Ohio St. 3d 136, 538 N.E.2d 373. The petitioner must therefore prove that: 1). counsel's performance fell below an objective standard of reasonable representation; and 2). there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id.

{¶17} Furthermore, before a hearing is granted in proceedings for post conviction relief upon a claim of ineffective assistance of trial counsel, the petitioner

bears the initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. *Calhoun,* 86 Ohio St.3d at 289, 714 N.E.2d 905; *State v. Jackson* (1980), 64 Ohio St.2d 107, 413 N.E.2d 819, syllabus; see, also *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052; *State v. Phillips*, supra.

B. Res Judicata.

{¶18} Another proper basis upon which to deny a petition for post conviction relief without holding an evidentiary hearing is *res judicata.  Lentz,* 70 Ohio St.3d at 530; *State v. Phillips*, supra.

{¶19} Under the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. *State v. Szefcyk* (1996), 77 Ohio St.3d 93, 671 N.E.2d 233, syllabus, approving and following *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus.  It is well settled that, "pursuant to *res judicata,* a defendant cannot raise an issue in a [petition] for post conviction relief if he or she could have raised the issue on direct appeal." *State v. Reynolds* (1997), 79 Ohio St.3d 158, 161, 679 N.E.2d 1131. Accordingly, "[t]o survive preclusion by *res judicata,* a petitioner must produce new evidence that would render the judgment void or voidable and must also show that he could not have appealed the claim based upon information contained in the original

record." *State v. Nemchik* (Mar. 8, 2000), Lorain App. No. 98CA007279 at 3; see, also, *State v. Ferko* (Oct. 3, 2001), Summit App. No. 20608, at 5; *State v. Phillips*, supra.

**{¶20}** Similarly, regarding claims of ineffective assistance of trial counsel in post conviction proceedings, the Ohio Supreme Court has stated that where a defendant, represented by different counsel on direct appeal, "fails to raise [in the direct appeal] the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for post conviction relief." *State v. Cole* (1982), 2 Ohio St.3d 112, 443 N.E.2d 169, syllabus; see, also, *Lentz,* 70 Ohio St.3d at 530, 639 N.E.2d 784; *State v. Phillips*, supra.

**{¶21}** Before reaching the substantive claims raised by appellant we must first review our jurisdiction to review the trial court's denial of appellant's petition for post conviction relief.

### C. Timeliness

**{¶22}** Pursuant to R.C. 2953.21(A) (2), a petition for post conviction relief "shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the Supreme Court. If no appeal is taken, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal."

**{¶23}** No direct appeal was filed by appellant in the case at bar. Therefore, under R.C. 2953.21(A) (2) appellant was required to file his petition no later than one

hundred eighty days after the expiration of the time for filing the appeal. However, appellant did not file his petition for post-conviction relief until June 1, 2010, which is well beyond the period provided for in the statute. Because appellant's petition was untimely filed, the trial court was required to entertain appellant's petition only if he could meet the requirements of R.C. 2953.23(A). This statute provides, in pertinent part:

{¶24} * * * [A] court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
"(1) Either of the following applies:

{¶25} "(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

{¶26} "(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

{¶27} "(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable fact finder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable fact finder would have found the petitioner eligible for the death sentence."

{¶28} In the case sub judice, as the state aptly noted in its response to appellant's arguments, appellant made no allegation that his untimely petition fell under

the exceptions outlined in R.C. 2953.23(A)(1), let alone establish by clear and convincing evidence the requirements therein.

**{¶29}** Accordingly, the trial court correctly found appellant's petition untimely filed. However, assuming *arguendo* appellant had timely filed his petition he would still not have been entitled to relief.

## D. Substantive Claims

**{¶30}** The substance of appellant's claims on appeal focus upon his contention that trial counsel was ineffective.

## II.

**{¶31}** For clarity, we shall address appellant's second assignment of error first.

**{¶32}** Appellant's second assignment of error does not rely on the language in R.C. 2953.23(A)(1)(a) that he "was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief," but rather claim that counts one through four of his indictment were defective and insufficient to charge a crime.

**{¶33}** Contrary to Crim.R. 12(C) (2), appellant did not object in the trial court to any deficiency in the indictment[1]. The "'failure to timely object to the allegedly defective indictment constitutes a waiver of the issues involved.'" *State v. Schneider,* 9th Dist. No. 06CA0072-M, 2007-Ohio-2553, ¶ 20, quoting *State v. Biros* (1997), 78 Ohio St.3d 426, 436, 678 N.E.2d 891; *State v. Brady,* 8th Dist. No. 87854, 2007-Ohio-1453, ¶ 139. Appellant's failure to object to the indictment in the trial court thus waives all but plain error. *State v. Crosky,* 10th Dist. No. 06AP-655, 2008-Ohio-145, ¶ 87, citing *State v.*

---

[1] Appellant's ineffective assistance of counsel claims shall be dealt with in our discussion of Appellant's First Assignment of error, infra.

*Carnes,* 12th Dist. No. CA2005-01-001, 2006-Ohio-2134, ¶ 11. See also *State v. Horner,* --- Ohio St. 3d ----, 2010-Ohio-3830, paragraph three of the syllabus (stating, "[b]y failing to timely object to a defect in an indictment, a defendant waives all but plain error on appeal"). For a defect at trial to rise to the level of plain error, it clearly must have affected the outcome of the case. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus (stating that an error is plain when it is such that "but for the error, the outcome of the trial clearly would have been otherwise"). *State v. Carse,* Franklin App. No. 09AP-932, 2010-Ohio-4513 at ¶ 17.

{¶34} In *State v. Horner,* supra the Ohio Supreme Court specifically addressed in the syllabi the issues appellant raises on this appeal regarding his indictment. *State v. Salinas,* Franklin App. No. 09AP-1201, 2010-Ohio-4738 at ¶14. In overruled *Colon I* and *State v. Colon,* 119 Ohio St.3d 204, 893 N.E.2d 169, 2008-Ohio-3749 ("*Colon II* "), the court held, in the syllabi (1) "[a]n indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state," and (2) "[b]y failing to timely object to a defect in an indictment, a defendant waives all but plain error on appeal."

{¶35} A. "Intent to kill"

{¶36} Appellant first argues that "[t]he indictment(s) filed in the instant case i.e. Count(s) 1 and 2, are written in the short form and seek to charge the offense solely in the language R.C. 2903.01(B). However, the said Count(s) omit a direct and positive averment of the essential element of an 'intent to kill', and, thereby, fails to fairly apprise Appellant, with reasonable certainty, of the specific nature of the accusation against him

to the end that he would know what he was to be prepared to meet and to defend against at trial." [Appellant's Brief at 19].

{¶37} R.C. 2903.01 Aggravated Murder provides, in relevant part as follows:

{¶38} "* * *

{¶39} "(B) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape."

{¶40} In the case at bar, Count One of the Indictment states,

{¶41} "That **WILLIAM DOUGLAS PERRY** late of said County on or about the 3rd day of October in the year of our Lord two thousand and eight, at the County of Stark, aforesaid, did purposely cause, the death of Brett W. Smith, while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit Aggravated Robbery [R.C. 2911.01(A)(3)], in violation of Section 2903.01(B) of the Ohio Revised Code, contrary to the statute in such cause made and provided, and against the peace and dignity of the State of Ohio."

{¶42} Count Two of the Indictment states,

{¶43} "And the jurors aforesaid, by their oaths aforesaid, and by virtue of the authority aforesaid, do further find and present that **WILLIAM DOUGLAS PERRY** late of said County on or about the 3rd day of October in the year of our Lord two thousand and eight, at the County of Stark, aforesaid, did purposely cause the death of Brett W. Smith, while committing or attempting to commit, or" while fleeing immediately after

committing or attempting to commit Aggravated Burglary [R.C. 2911.11(A)(1)], in violation of Section 2903.01(B) of the Ohio Revised Code, contrary to the statute in such cause made and provided, and against the peace and dignity of the State of Ohio."

{¶44} The indictment specified a mens rea requirement. The culpable mental state for aggravated murder is purpose-to "purposely cause." R.C. 2903.01(B). *State v. Fry*, 125 Ohio St.3d 163, 169, 926 N.E.2d 1239, 1253, 2010-Ohio-1017 at ¶40. Thus, the indictment was proper because it included the culpable mental state for this offense. Id.

{¶45} The Court in *Fry*, supra further held that a defendant commits felony murder by proximately causing another's death while possessing the *mens rea* element set forth in the underlying felony offense. In other words, the predicate offense contains the *mens rea* element for felony murder. Therefore, the *mens rea* element need not appear in felony murder count, as long as it is specified in count charging the predicate offense. *Fry*, supra 125 Ohio St.3d 163, 169 - 170, 926 N.E.2d 1239, 1253, 2010-Ohio-1017 at ¶ 43.

{¶46} In the case at bar, Count One specifies aggravated robbery in violation of R.C. 2911.01(A) (3) as the predicate offense for the felony murder. R.C. 2911.01 defines the elements of aggravated robbery as follows:

{¶47} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶48} "* * *

{¶49} "(3) Inflict, or attempt to inflict, serious physical harm on another."

**{¶50}** In *State v. Horner*, 126 Ohio St.3d 466, 935 N.E.2d 26, 2010-Ohio-3830, the Ohio Supreme Court held, "an indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state, overruling *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, and *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169." Id at paragraph one of the syllabus. Relevant to the case at bar, the Court in *Horner* further noted that aggravated robbery as defined by R.C. 2911.01(A) (3) is a strict liability offense. Id at 474, 935 N.E.2d at 34, 2010-Ohio-3830 at ¶51. The Court concluded, "Thus, because the language of Horner's indictment charging him with aggravated robbery tracked the aggravated robbery statute, R.C. 2911.01(A)(3), and because the statute does not require any further mens rea requirement beyond that encompassed in the theft portion of the statute, the grand jury considered the essential elements of aggravated robbery. Accordingly, we uphold the appellate court's determinations that the indictment was not defective and that there was no plain error…." Id. at 475, 935 N.E.2d at 34, 2010-Ohio-3830 at ¶ 55.

**{¶51}** In the case at bar, the aggravated felony-murder count in count one of the indictment, read in *pari materia* with the related aggravated robbery count, provided ample notification of the elements of the underlying offenses that the state was required to prove. See *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 29. Thus, the indictment for Count One was not defective. *Fry*, supra 125 Ohio St.3d 163, 169 - 170, 926 N.E.2d 1239, 1253, 2010-Ohio-1017 at ¶ 41.

**{¶52}** In the case at bar, Count Two of the Indictment specified aggravated burglary as the predicate offense for the felony-murder. The offense of aggravated

burglary was charged separately in Count Four of the indictment. The aggravated-burglary count states: "[appellant]… did, knowingly, by force, stealth, or deception, trespass in 81 Balsam St. N.W., North Canton, Ohio, an occupied structure, or a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender was present, *with purpose to commit* therein any criminal offense, and the said WILLIAM DOUGLAS PERRY recklessly inflicted, or attempted or threatened to inflict physical harm on Brett W. Smith, in violation of Section 2911.11(A)(1) of the Ohio Revised Code, contrary to the statute in such cause made and provided, and against the peace and dignity of the State of Ohio." [Emphasis added].

**{¶53}** The culpable mental state for aggravated burglary is "purposeful" and was properly set out in the indictment. *Fry,* supra 125 Ohio St.3d 163, 170, 926 N.E.2d 1239, 1253 - 1254, 2010-Ohio-1017 at ¶ 44.

**{¶54}** The aggravated felony-murder count, read in *pari materia* with the related aggravated burglary count, provided ample notification of the elements of the underlying offenses that the state was required to prove. See *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 29. Thus, the indictment for Count Two was not defective. *Fry*, supra 125 Ohio St.3d 163, 169 - 170, 926 N.E.2d 1239, 1253, 2010-Ohio-1017 at ¶ 41.

**{¶55}** B. "Theft Offense" and "Criminal Trespass"

**{¶56}** Appellant next argues that his indictment was defective because it did not enumerate the elements of the theft offense alleged in Counts Three and Four, aggravated robbery and aggravated burglary. He claims that because these charges

failed to set forth the elements of the "predicate offense" of theft, and instead merely cited section 2913.01 of the Revised Code, these counts fail to charge a predicate offense. Appellant further complains that Count Four fails to charge the "criminal trespass portion" of aggravated burglary. He argues that this count must include all the elements of criminal trespass and further must include a separate culpable mental state for criminal trespass.

{¶57} An indictment is sufficient if it (1) contains the elements of the charged offense; (2) gives the defendant adequate notice of the charges; and, (3) protects the defendant against double jeopardy. *Valentine v. Konteh* (C.A.6, 2005), 395 F.3d 626, 631, citing *Russell v. U.S.* (1962), 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240.

{¶58} Generally, the requirements of an indictment may be met by reciting the language of the criminal statute. See *State v. Murphy* (1992), 65 Ohio St.3d 554, 583, 605 N.E.2d 884, 907. In *Murphy,* the Ohio Supreme Court rejected the appellant's proposition that the indictment was defective because it failed to identify the precise type of conduct by which he violated R.C. 2911.01 (aggravated robbery), and 2911.11 (aggravated burglary). Citing *State v. Landrum* (1990), 53 Ohio St.3d 107, 119, 559 N.E.2d 710, 724, the Court held that an indictment using the words of the applicable statute was sufficient to charge a defendant with these crimes. *State v. Childs*, 88 Ohio St.3d 194, 199, 724 N.E.2d 781, 785, 2000-Ohio-298.

{¶59} In the case at bar, the wording of the indictment tracked the language for aggravated burglary in R.C. 2911.11 and did not need to allege the particular felony that appellant had intended to commit. *State v. Foust*, supra 105 Ohio St.3d at 143-144, 823 N.E.2d at 850, 2004-Ohio-7006 at ¶ 31.(Citing *State v. Frazier* (1995), 73 Ohio

St.3d 323, 331, 652 N.E.2d 1000; *State v. Waszily* (1995), 105 Ohio App.3d 510, 516, 664 N.E.2d 600, abrogated in part on other grounds by *State v. Fontes* (2000), 87 Ohio St.3d 527, 721 N.E.2d 1037).   In addition, the indictment in the case at bar clearly alleged that appellant "...did, knowingly, by force, stealth or deception, trespass in 81 Balsam St. N.W...."

**{¶60}** Finally, appellant received a bill of particulars that supplied much of the information he now claims he lacked.  *Murphy*, supra 65 Ohio St.3d at 583, 605 N.E.2d at 907.  Appellant has not shown that he was prejudiced in the defense of his case or that he would have proceeded differently if each of the felony-murder counts, the R.C. 2929.04(A) (7) specifications, the aggravated burglary and the aggravated robbery count had been worded differently.  *State v. Foust*, 105 Ohio St.3d 137, 145, 823 N.E.2d 836, 851, 2004-Ohio-7006 at ¶ 36.  (Citing *State v. Joseph,* 73 Ohio St.3d at 457, 653 N.E.2d 285).

**{¶61}** Accordingly, appellant's indictment was not defective.

**{¶62}** For all the forgoing reasons, appellant's second assignment of error is overruled.

I.

**{¶63}** In his first assignment of error, appellant claims that his trial counsel were ineffective when they permitted him to plead to a defective indictment and further to plead while he was allegedly heavily medicated and thus according to appellant, incapable of making a decision.  We disagree.

**{¶64}** A claim of ineffective assistance of counsel requires a two-prong analysis.  The first inquiry is whether counsel's performance fell below an objective standard of

reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶65} In order to warrant a finding that trial counsel was ineffective, the petitioner must meet *both* the deficient performance and prejudice prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance* (2009), --- U.S. ----, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251.

{¶66} To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

{¶67} "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions

were outside the wide range of professionally competent assistance.  In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.  At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶68} In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.  At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶69} Appellant must further demonstrate that he suffered prejudice from his counsel's performance.  See *Strickland*, 466 U. S., at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment").  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

{¶70} In *State v. Kapper* (1983), 5 Ohio St.3d 36, 448 N.E.2d 823, cert. denied (1983), 464 U.S. 856 the Ohio Supreme Court reviewed the ineffectiveness claim in the context of the allegation of a coerced guilty plea. The ineffectiveness claim was raised in the context of a post-conviction relief petition [R.C. 2953.21], and the Ohio Supreme Court upheld its summary dismissal by the trial court because the petitioner had not supported his assertions with any evidentiary materials other than his self-serving affidavit. In so ruling, the Supreme Court adopted the proposed rationale of the State:

{¶71} "'As in the case of ineffective assistance of counsel, an allegation of a coerced guilty plea involves actions over which the State has no control. Therefore, the defendant must bear the initial burden of submitting affidavits or other supporting materials to indicate that he is entitled to relief. Defendant's own self-serving declarations or affidavits alleging a coerced guilty plea are insufficient to rebut the record on review that shows that his plea was voluntary. A letter or affidavit from the court, prosecutors or defense counsel alleging a defect in the plea process may be sufficient to rebut the record on review and require an evidentiary hearing.' We find this rationale persuasive." *Kapper*, 5 Ohio St.3d at 38, 448 N.E.2d at 826. See, *State v. Rockwell*, Stark App. No. 2008-CA-00009, 2008-Ohio-2162 at ¶47-49.

{¶72} Additionally, Ohio courts recognize an exception to the doctrine of res judicata in post conviction proceedings when the petitioner presents new and competent evidence outside the record. See, e.g., *State v. Elmore,* 5th Dist. No. 2005-CA-32, 2005-Ohio-5940 at ¶21-22. In *State v. Phillips*, 9th Dist. No. 20692, 2002-Ohio-823, the court noted, "[s]ignificantly, evidence outside the record alone will not guarantee the right to an evidentiary hearing. *State v. Combs* (1994), 100 Ohio App.3d 90, 97, 652

N.E.2d 205. Such evidence 'must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of [*State v. Perry* (1967), 10 Ohio St.2d 175] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery. (Citation omitted.) Thus, the evidence must not be merely cumulative of or alternative to evidence presented at trial. *Combs*, 100 Ohio App.3d at 98, 652 N.E.2d 205."

**{¶73}** Appellant has not factually substantiated his claim. Further, the record does not indicate that appellant has made any effort to show that he could not with reasonable diligence have discovered and produced evidence of counsel allegedly coercing a drugged client to accept a plea bargain. Appellant presented the trial court with no evidentiary quality evidence to support his claims. He provided only his own self-serving affidavit, some psychiatry notes from visits that took place more than a year before appellant entered his guilty pleas, some drug information sheets, apparently garnered from the Internet, and his own affidavit.

**{¶74}** "Prior to the promulgation of Evid.R. 706, effective July 1, 1998, rules governing the use of learned treatises evolved under the common law. In *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph two of the syllabus, the court held that learned treatises, even though properly identified, authenticated, and recognized as standard authority, are not admissible in evidence to prove the truth of the matter asserted therein. Rather, 'learned treatises are considered hearsay, may not be used as substantive evidence, and are specifically limited to impeachment purposes only.' *Ramage v. Cent. Ohio Emergency Serv. Inc.* (1992), 64

Ohio St.3d 97, 110, 592 N.E.2d 828, 838, citing Giannelli, Ohio Evidence Manual (1989), Section 702.06, Author's Comment; *Piotrowski v. Corey Hosp.* (1961), 172 Ohio St. 61, 15 O.O.2d 126, 173 N.E.2d 355; *Lambert v. Dally* (1972), 30 Ohio App.2d 36, 59 O.O.2d 29, 281 N.E.2d 857; and *Hallworth*, supra". *Freshwater v. Scheidt* (1999), 86 Ohio St.3d 260, 267-68, 1999-Ohio-161, 714 N.E.2d 891, 896. (Footnotes omitted). The Ohio Rules of Evidence do not change this result.

**{¶75}** "The learned treatise exception to the hearsay rule set forth in Fed.Evid.R. 803(18) has no counterpart in Ohio Evid.R. 803. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 110, 592 N.E.2d 828, 838. As stated by this court in *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 354, 41 O.O. 341, 343, 91 N.E.2d 690, 693:

**{¶76}** `The great weight of authority holds that medical books or treatises, even though properly identified and authenticated and shown to be recognized as standard authorities on the subjects to which they relate, are not admissible in evidence to prove the truth of the statements therein contained. 20 American Jurisprudence, 816, Section 968; 65 A.L.R., 1102, annotation.'

**{¶77}** "Moreover, in *Piotrowski v. Corey Hosp.* (1961), 172 Ohio St. 61, 69, 15 O.O.2d 126, 130, 173 N.E.2d 355, 360, this court underscored the basis for the exclusion of such evidence:

**{¶78}** "Such rule corresponds with the decided weight of authority which is to the effect that medical and other scientific treatises representing inductive reasoning are inadmissible as independent evidence of the theories and opinions therein expressed. The bases for exclusion are lack of certainty as to the validity of the opinions and

conclusions set forth, the technical character of the language employed which is not understandable to the average person, the absence of an oath to substantiate the assertions made, the lack of opportunity to cross-examine the author, and the hearsay aspect of such matter'.

**{¶79}** "Accordingly, in Ohio, a learned treatise may be used for impeachment purposes to demonstrate that an expert witness is either unaware of the text or unfamiliar with its contents. Moreover, the substance of the treatise may be employed only to impeach the credibility of an expert witness who has relied upon the treatise, *Hallworth v. Republic Steel Corp.*, supra, 153 Ohio St. at 355-356, 41 O.O. at 343-344, 91 N.E.2d at 694, or has acknowledged its authoritative nature." *Stinson v. England* (1994), 69 Ohio St.3d 451, 457, 1994-Ohio-35, 633 N.E.2d 532, 539. See, *State v. Elmore* Licking App. No. 2005-CA-32, 2005-Ohio-5940 at ¶83.

**{¶80}** In the case at bar, appellant has failed to make any showing that the articles submitted were properly identified and authenticated and shown to be recognized as standard authorities on the subjects to which they relate. "[E]vidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *State v. Coleman* (March 17, 1993), 1st Dist. No. C-900811, at 7; *State v. Combs* (1994), 100 Ohio App.3d 90, 98, 653 N.E.2d 205, 209; *State v. Elmore*, supra at ¶ 84.

**{¶81}** Even if we were to consider the articles as admissible, we would find that they are only marginally significant. The studies and the articles do not discuss any

aspect of appellant or appellant's specific medical history. These exhibits, therefore, do not pass the minimum threshold of cogency required to raise a constitutional claim. See *State v. Combs*, supra. The magazine or Internet articles about cases in general or about another case are irrelevant to appellant's petition for post conviction relief. *State v. Coleman*, supra; *State v. Combs*, supra. See, *State v. Elmore*, supra at ¶85.

{¶82} Likewise medical records of appellant that merely indicate that he was taking medication in 2008 with no indication as to how the condition presently affects the appellant are of marginal significance. "Evidence presented outside the record must meet some threshold standard of cogency' to advance the petitioner's claim beyond mere hypothesis." *State v. Brown* (Jan. 14, 2000), Lucas App. No.L-99-1251, quoting *State v. Lawson* (1995), 103 Ohio App.3d 307, 315, 659 N.E.2d 362 (citation omitted); *State v. Elmore, supra*.

{¶83} Accordingly, the trial court correctly denied appellant's petition for post conviction because the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun,* 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

{¶84} Next, appellant appears to complain that his trial counsel took advantage of his allegedly being heavily mediated at the time of his plea, coerced him into pleading guilty, and failing to inform the court of his medicated state. Appellant states in his brief, "This issue was raised at the change of plea hearing by the Appellant when asked if he was under the influence of any drugs, and he replied, 'yes' and informed the trial court of the drugs he was taking and his Bipolar Disorder and his Post-Traumatic Stress

Disorder. The trial court had a duty to investigate this matter before accepting a plea that could not be knowingly, intelligently, and voluntarily made." [Appellant's Brief at 11].

**{¶85}** Appellant, however, presented the trial court with no evidentiary quality evidence to support his claims. Further, appellant has not provided this Court with a transcript of his change of plea hearing that was conducted in the trial court.

**{¶86}** In *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, the Supreme Court of Ohio held the following: "[t]he duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See *State v. Skaggs* (1978), 53 Ohio St. 2d 162. This principle is recognized in App.R. 9(B), which provides, in part, that ' * * *the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record.* * *.' When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." (Footnote omitted.)

**{¶87}** Without a transcript of the proceedings, appellant cannot demonstrate any error or irregularity in connection with the trial court's decision to accept appellant's negotiated guilty pleas. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St. 2d 197, 199, 400 N.E.2d 384. A presumption of regularity applies to the trial court's acceptance

of appellant's guilty pleas and appellant has shown us nothing to overcome the presumption.

**{¶88}** In the case sub judice, appellant did not meet his burden, under App.R. 9(B), to supply this Court with a transcript of the proceedings from his original plea and the original sentencing hearing.  If such transcript were unavailable, other options were available to appellant in order to supply this Court with a transcript for purposes of review.  Specifically, under App.R. 9(C), appellant could have submitted a narrative transcript of the proceedings, subject to objections from appellee and approval from the trial court.  Also, under App.R. 9(D), the parties could have submitted an agreed statement of the case in lieu of the record.  The record in this matter indicates appellant did not attempt to avail himself of either App.R. 9(C) or 9(D).

**{¶89}** Because we have found no instances of error in this case[2], we find appellant has not demonstrated that he was prejudiced by trial counsel's performance.

**{¶90}**  Appellant's first assignment of error is overruled.

---

[2] See Assignment of Error One, supra.

**{¶91}** For the foregoing reasons, the judgment of the Court of Common Pleas, of

Stark County, Ohio, is affirmed.

By Gwin, J.,

Edwards, P.J., and

Hoffman, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. JULIE A. EDWARDS

_____

WSG:clw 1215                               HON. WILLIAM B. HOFFMAN

[Cite as *State v. Perry*, 2011-Ohio-274.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| WILLIAM DOUGLAS PERRY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2010-CA-00185 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, of Stark County, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. JULIE A. EDWARDS

_____
HON. WILLIAM B. HOFFMAN