[Cite as *State v. Fitzgerald*, 2014-Ohio-5024.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 13CA3579 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| TYLER R. FITZGERALD, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 11/07/14** |

_____
APPEARANCES:

Richard M. Nash, Jr., Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Pat Apel and Julie Hutchinson, Scioto County Assistant Prosecuting Attorneys, Portsmouth, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Tyler R. Fitzgerald appeals his convictions in the Scioto County Court of Common Pleas after he was found guilty of rape, a violation of R.C. 2907.02(A)(2) and unlawful sexual conduct with a minor, a violation of R.C. 2907.04(A)/(B)(1). On appeal, Fitzgerald contends: (1) the trial court erred when it applied the incorrect legal standard when ruling on his request to enter a plea of not guilty by reason of insanity; (2) the trial court abused its discretion when it failed to grant his motion to excuse jurors for cause; (3) the trial court erred when it failed to consider R.C. 2929.12(F) when

imposing its sentence; and, (4) the trial court erred when it denied his motion for a new trial based on prosecutorial misconduct. For the reasons which follow, we disagree with Fitzgerald. Accordingly, we overrule all assignments of error and affirm the judgment of the trial court.

FACTS

{¶2} On March 14, 2013, Appellant was indicted on two counts of rape and unlawful sexual conduct with a minor. On May 22, 2013, he entered a not guilty plea at his arraignment. On July 26, 2013, the court heard arguments on Appellant's motion to amend his not guilty plea to a plea of not guilty by reason of insanity (N.G.R.I.). The trial court denied Appellant's motion and the cause proceeded to trial on July 29, 2013. A jury of his peers convicted Appellant of both counts. The two counts were merged for sentencing and the State of Ohio elected to proceed on the rape conviction. Appellant was sentenced to a stated mandatory prison term of eight years. Appellant subsequently filed a motion for new trial on the basis of prosecutorial misconduct. The motion was denied.

{¶3} The above indictment was filed subsequent to events which occurred on or about October 22, 2012. Defendant/Appellant was a 21-year-old Marine, on leave, having previously been deployed in Afghanistan for 8 months. The alleged victim was Appellant's 15-year-old step-sister, "P.E."

Appellant had known P.E. since she was three years old.  Appellant and the victim participated with others in events which began on October 21, 2012 and extended into the early morning hours at a location in the Highland Bend area of Scioto County.  Appellant and two friends had been frequenting bars, prior to meeting P.E. and another minor female at the trailer in Highland Bend.  Appellant and P.E. had been text messaging each other in the hours prior to the planned event, a drinking game.

{¶4}  P.E. got sick during the drinking game, and was helped to her bedroom.  After the drinking game concluded and the other parties retired to various locations to sleep, an incident of sexual intercourse occurred between Appellant and P.E.  Appellant claimed it was consensual.  P.E. claimed she awoke in pain and found Appellant on top of her.  She immediately reported being raped.

{¶5}  When the case proceeded to trial, the jurors heard testimony from law enforcement officials, a sexual assault nurse examiner, a forensic scientist, and lay witnesses present in the house at the time of the incident.  Both Appellant and P.E. testified.  The testimony of Appellant and P.E. boiled down to a "he said/she said" determination.  At the conclusion of the trial, Appellant was convicted of both counts.

{¶6} As indicated above, Appellant was immediately sentenced and a motion for new trial was denied.  Appellant has filed a timely appeal. Where relevant, additional facts are set forth more fully below.

## ASSIGNMENTS OF ERROR

I. THE TRIAL COURT ERRED WHEN IT APPLIED THE INCORRECT LEGAL STANDARD WHEN RULING ON APPELLANT'S REQUEST TO ENTER A PLEA OF NOT GUILTY BY REASON OF INSANITY.

II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT APPELLANT'S MOTION TO EXCUSE JURORS FOR CAUSE.

III. TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER R.C. 2929.12(F) WHEN IMPOSING SENTENCE.

IV. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR NEW TRIAL BASED ON PROSECUTORIAL MISCONDUCT.

## ASSIGNMENT OF ERROR ONE

### A.  STANDARD OF REVIEW

{¶7} "The defense of not guilty by reason of insanity must be pleaded at the time of arraignment except that the court for good cause shown shall permit such a plea to be entered at any time before trial." *State v. Smith,* 11th Dist. Trumbull No. 2005-T-0080, 2006-Ohio-4669, ¶ 13.  A trial court is given sound discretion to determine whether a defendant's reasons constitute "good cause" under Crim.R. 11(H).  *Id.*  Thus, the trial court's

decision will not be disturbed absent a showing of an abuse of discretion. *Id.* The term "abuse of discretion" implies that the court's decision was arbitrary, unreasonable, or unconscionable. *Id.*

{¶8} The admission of evidence is within the sound discretion of the trial court. *State v. Murphy,* 4th Dist. Scioto No. 09CA3311, 2012-Ohio-5031, ¶ 71, citing *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), at paragraph two of the syllabus. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Murphy, supra,* at ¶ 55, citing *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.,* 63 Ohio St.3d 498, 506, 589 N.E.2d 24 (1992); *Wilmington Steel Products, Inc. v. Cleveland Elec. Illuminating Co.,* 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *Murphy, supra,* citing *In re Jane Doe 1,* 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991), citing *Berk v. Matthews,* 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

## B. LEGAL ANALYSIS

{¶9} Appellant contends the trial court abused its discretion in two ways. Appellant first argues the trial court failed to employ the correct legal standard when ruling on the motion to plead not guilty by reason of insanity.

Second, Appellant argues the trial court abused its discretion by excluding

the records provided by Appellant as hearsay.  For the reasons which follow,

we disagree with Appellant.

1.  Did the trial court abuse its discretion when it denied Appellant's motion
for an evaluation?

{¶10}  The July 26, 2013 hearing on Appellant's request for a sanity

evaluation, joined with an amended plea of not guilty by reason of insanity,

was held on a Friday morning, with the jury trial set for the following

Monday.  Appellant's counsel pointed out that the plea was based upon

Appellant's deployment in Afghanistan in an area of combat.  Counsel

stated:

> "My interviews with the Defendant following his deployment,
> was that he was flagged for P.T.S.D., post traumatic stress
> disorder.  And through those discussions, it appeared as if the
> symptoms of P.T.S.D. had appeared while intoxicated. * * *
>
> According to the Bill of Particulars in this case, this case also
> involves alcohol intoxication.  So based on those factors, I was
> concerned that P.T.S.D. may play a role.  Not only that, but I
> reviewed a letter written by the Defendant's step-mother, who
> also stated that the Defendant's behavior has changed.  It's
> different now that he has returned from deployment. * * *
>
> Based on those factors and I included an article written by a
> Doctor Fabian, that states that post traumatic stress disorder can
> have legal implications, and that one of those is not guilty by
> reason of insanity. * * *
>
> Based on that information, Your Honor, I'm not a doctor, I
> don't know if he has it, but because I'm not a doctor is why I

have asked for the evaluation.  And for those reasons, we would ask that the evaluation be granted.  Thank you."

Appellant did not call witnesses.

**{¶11}**  In response, the State pointed out pursuant to Crim.R. 11(H), that good cause must be shown since the plea was not made at arraignment. The State submitted records from Serenity Counseling (State's Exhibit 1)[1] and pre-deployment and post-deployment screening records from the Marine Corp (State's Exhibit 2) in response to the documents attached to Appellant's motion.

**{¶12}**  In closing, Appellant's counsel stated: "We're just relying on what we filed seeking the assessment.  We don't have a doctor.  We're seeking one to- -to access Mr. Fitzgerald."  The State concluded: "Now the hearing that we just had was directed to N.G.R.I….And I don't think there's any issue of competency here. I just want to make sure we- -we understand that."  The trial court agreed.  Appellant's counsel stated: "We did not raise competency.  So there is no issue."  During the hearing, the trial court indicated the submitted documents had been reviewed.  In ruling on the motion, the trial court stated: "I don't, at this time, believe there's been good

---

[1] The first page of the "Serenity Counseling" record indicates that Appellant was seen for an initial mental health assessment on July 11, 2013, a little over 2 weeks prior to trial.  The third paragraph of the document states:  "Based on information learned after my assessment and the revelation that Mr. Fitzgerald was allegedly not truthful with his legal history, I would have to question the validity of the assessment interview and his PTSD diagnosis."

cause shown for the N.G.R.I., and therefore, we'll proceed to trial Monday."

The trial court's entry regarding the matter used this language:

> "This matter came before the Court this 26th day of July, 2013,
> upon Defendant's Plea of Not Guilty by Reason of Insanity.
> Present were Pat Apel and Julie Hutchinson for the State of
> Ohio, Richard Nash, Jr. for the Defendant, Tyler R. Fitzgerald,
> as well as the Defendant.
>
> The Court having reviewed the entire file herein along with the
> records from Serenity Counseling for All Ages and records
> from the General Counsel of the Navy finds that the above
> named Defendant is capable of understanding the nature and
> objective of the proceedings against him, and is able to assist
> his counsel in preparing his defense.
>
> This Court therefore will find the Plea of Not Guilty by Reason
> of Insanity to be not well taken and overruled."

**{¶13}** Appellant first argues the trial court used the incorrect legal standard. According to the judgment entry, Appellant argues, his motion was denied because the trial court found that he is capable of understanding the nature and objective of the proceedings, and assist his counsel in his defense. Appellant argues the trial court referenced the standard required to determine whether an accused is competent to stand trial, pursuant to R.C. 2945.37(G).[2]

---

[2] Pursuant to R.C. 2945.371(A), a trial court may order one or more evaluations of a defendant's present mental condition whenever his competence to stand trial is at issue. *State v. Stahl,* 2nd Dist. Greene No. 2004-CA-69, ¶ 19. "No competency evaluation, therefore, is required by R.C. 2945.371 every time that the issue of defendant's mental condition is raised. Rather, 'the wording of the statute implies that the ordering of an examination is a matter within the discretion of the trial court.' "*State v. Dye,* 5th Dist. Licking No. 99-CA-2, quoting *State v. Bailey,* 90 Ohio App.3d 58, 67, 627 N.E.2d 1078 (11th Dist.1992).

{¶14} Appellee points out Appellant was indicted on March 14, 2013, and trial was scheduled for July 29, 2013. Appellant sought assessment with the Serenity Counseling on July 12, 2013. Appellant then filed a motion for referral for a sanity evaluation on July 17, 2013, and his supplemental plea of not guilty by reason of insanity on July 19, 2013. Appellee deems Appellant's actions with regard to the request for sanity evaluation and supplemental plea were last minute, self-serving, pre-trial strategy. Appellee argues although the entry found that "Appellant is capable of understanding the nature and objective of the proceedings against him and is able to assist his counsel" sounds like a competency finding, the trial judge ruled from the bench that Appellant had not shown good cause to supplement his plea. Appellee asserts the entry supports the evidence and the court's ruling from the bench, and any error by including the language about competency is harmless error. We agree.

{¶15} In *State v. Smith, supra,* Smith was indicted with one count of aggravated robbery with two specifications, a firearm specification and a repeat violent offender specification. Smith was also charged with having a weapon under disability. These charges arose subsequent to a gas station robbery, high speed chase involving Smith, and his flight on foot through a

residential neighborhood.  He was later identified on security cameras at the gas station.

{¶16}  At arraignment, Smith pled not guilty.  The matter was set for trial.  On the morning of the first day of trial, Smith moved to amend his not guilty pleas to not guilty by reason of insanity pleas.  The trial court asked Smith what good cause he had for moving the court to change the plea. Smith advised he had a liver disease, that his wife had recently left him, that he no longer had health insurance to cover the cost of antidepressants, and at the time of the crimes he had been drinking to the point of not remembering things on a daily basis.  The trial court noted it had previously discussed these factors with Smith on two prior occasions and he intelligently addressed the court.  The court concluded Smith did not demonstrate good cause for changing his plea.  His motion was denied.

> "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." *Smith, supra* at ¶ 16; R.C. 2901.01(A)(14).

{¶17}  The appellate court noted Smith's argument that he had a liver disease and was drinking on the night in question and, as such, was rendered incoherent and unable to understand the wrongfulness of his conduct,

amounted to a defense of voluntary intoxication, and not to be taken into consideration in determining mental state. The appellate court concluded, at best, Smith demonstrated that he had a liver disease, a physical impairment which coupled with his voluntary consumption of alcohol, caused him to black out and not remember certain events. The appellate court found such circumstances did not justify a not guilty by reason of insanity defense and, further, found the trial court did not abuse its discretion by finding that Smith failed to demonstrate good cause and denying the motion to change his plea.

{¶18} Here, while the entry overruling Appellant's motion to supplement his plea to N.G.R.I. does not reference the "just cause" standard, the hearing transcript demonstrates the trial court stated: "I don't, at this time, believe there's been good cause shown for the N.G.R.I., and therefore, we'll proceed to trial Monday." The entry does, in fact, state that the trial court reviewed the "entire file" along with the records from Serenity Counseling and records from the General Counsel of the Navy. The entire file would also include the documents attached to Appellant's motion. Appellant chose to call no witnesses to testify as to the "just cause" determination. The entry specifically references the "Plea of Not Guilty by Reason of Insanity to be not well taken and overruled."

{¶19} We agree any discrepancy between the hearing transcript and the entry is harmless error. Though the court's entry here did not explicitly state "no just cause" was found, the hearing transcript indicates the trial court utilized the proper standard of review. We can make no giant leap that an improper standard of review was utilized. As has been held many times, just because an entry is not as detailed as an appellant would like, a lack of express findings is harmless error when it does not prevent the appellate court from actually reviewing issues on appeal. *State v. Johnson,* 7th Dist. Mahoning No. 06-MA-188, 208-Ohio-1183, ¶ 17, citing *State v. Brewer,* 48 Ohio St.3d 50,60, 549 N.E.2d 491 (1990). As such, we find no merit to Appellant's argument that the trial court utilized an incorrect standard of review or abused its discretion in overruling the motion to change his plea to one of N.G.R.I.

2. Did the trial court abuse its discretion when it ruled to exclude the records provided by Appellant as hearsay?

{¶20} In *Hallworth v. Republic Steel Corp.,* 153 Ohio St. 349, 354, 91 N.E.2d 690, 693, the court stated:

"The great weight of authority holds that medical books or treatises, even though properly identified and authenticated and shown to be recognized as standard authorities on the subjects to which they relate, are not admissible in evidence to prove the truth of the statements therein contained." *State v. Perry,* 5th Dist. Stark No. 2010-CA-00185, 2011-Ohio-274, at ¶ 76.

The court in *Piotrowski v. Corey Hosp.,* 172 Ohio St. 61, 173 N.E.2d 355, 360 (1961), further observed:

> "Such rule corresponds with the decided weight of authority which is to the effect that medical and other scientific treatises representing inductive reasoning are inadmissible as independent evidence of the theories and opinions therein expressed. The bases for exclusion are lack of certainty as to the validity of the opinions and conclusions set forth, the technical character of the language employed which is not understandable to the average person, the absence of an oath to substantiate the assertions made, the lack of opportunity to cross-examine the author, and the hearsay aspect of such matter." *Perry, supra,* at ¶ 78.

{¶21} In *Perry*, the defendant was indicted on two counts of aggravated murder, and various other charges. Eventually, with the assistance of two attorneys, Perry entered a negotiated plea and an agreed sentence. On appeal, Perry later contended he received ineffective assistance of counsel and he was coerced into pleading guilty to all charges while under the influence of prescription, mind- altering drugs for bipolar disorder and PTSD. To bolster his argument, he provided an affidavit with some attached psychiatry notes and drug information sheets. In considering Perry's claims, the appellate court held that Perry failed to make any showing that the articles submitted were properly identified and authenticated and shown to be recognized as standard authorities on the subject to which they relate. The appellate court stated: "[E]vidence

presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *Perry, supra*, quoting *State v. Coleman*, 1st Dist. No. C-900811, (March 17, 1993), at ¶ 7; *State v. Combs*, 100 Ohio App.3d 90, 98, 653 N.E.2d 205, 209 (1st Dist. 1994); *State v. Elmore, supra* at ¶ 84. The court went on to note:

> "Even if we were to consider the articles as admissible, we would find that they are only marginally significant. The studies and the articles do not discuss any aspect of appellant or appellant's specific medical history. These exhibits, therefore, do not pass the minimum threshold of cogency required to raise a constitutional claim." *Perry, supra* at ¶ 81.

**{¶22}** In Appellant's motion, he attached the following items: (1) a document from Serenity Counseling dated July 11, 2013, containing an actual diagnosis of post-traumatic stress disorder; (2) an article from Dr. Fabian; and (3) an article printed from the Internet regarding PTSD and alcohol triggers. At the motion hearing, defense counsel referenced his motion and attached documents. The State responded by submitting records from Serenity Counseling. The State further pointed out that the documents submitted by Appellant were not authenticated and there was no opportunity to cross-examine the authors. The trial judge indicated he had read all the

records.  The trial court concluded:  "They are- - they are hearsay.  All documents that have been submitted are hearsay… But I think they should be reviewed by the Court of Appeals, not for its admissibility, but just for review. Okay." The trial court's ruling in this regard is not exactly clear.

{¶23}  However, on appeal, Appellant specifically argues the trial court abused its discretion by excluding the records provided by Appellant as hearsay. In considering this argument only, we cannot agree the trial court abused its discretion.  Appellant did not bring in a witness to authenticate the Serenity Counseling diagnosis or to be cross-examined regarding the diagnosis.  Dr. Fabian's "learned treatise" was not subject to authentication or cross-examination.  The Internet article was likewise unable to be authenticated or its author cross-examined.

{¶24}  Furthermore, despite a lack of clarity regarding the status of the submitted documents from both Appellant and the State, the court's entry overruling Appellant's motion indicates the "entire file" was reviewed. The entire file contained conflicting information.  The file contained information that would indicate Appellant sought a PTSD diagnosis approximately two weeks before trial.  The file also contained information that the person making the diagnosis reconsidered it, having been provided additional information.  Indeed, the conflicting information is all hearsay.

But, the burden was on Appellant to properly authenticate and lay the foundation for admissibility.  Therefore, we cannot say the trial court abused its discretion in ruling to exclude Appellant's evidence as hearsay when Appellant did not lay any foundation. We further observe, as in *Perry*, Dr. Fabian's learned treatise and the other print out from the Internet do not discuss any aspect of Appellant or his specific medical history.[3]

{¶25}  Based on the above, we find no merit to Appellant's arguments that the trial court abused its discretion and we overrule the first assignment of error.  The judgment of the trial court is affirmed.

## ASSIGNMENT OF ERROR TWO

### A.  STANDARD OF REVIEW

{¶26}  A trial court has discretion over the scope, length, and manner of voir dire. *State v. Persohn,* 7th Dist. Columbiana No. 11CO37, ¶5; *State v. Irwin,* 184 Ohio St.3d 764, 2009-Ohio-5271, 922 N.E.2d 981, ¶ 35, citing *State v. Abuzahrieh*, 8th Dist. Cuyahoga No. 82689, 2003-Ohio-6639, at ¶ 12, citing *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, at ¶ 46.

{¶27}  Trial courts have discretion in determining a juror's ability to be impartial. *State v. Nields,* 93 Ohio St.3d 6, 2001-Ohio-1291, 752 N.E.2d

---

[3] A magazine or Internet article about cases in general or another case are irrelevant to Appellant's petition for post-conviction relief.  *Perry, supra,* at ¶ 81, citing *State v. Coleman,* supra, at ¶7.  See, *State v. Elmore,* 5th Dist. Licking No. 2005-CA-32, 2005-Ohio-5940, at ¶ 85.

859, ¶ 27, citing *State v. Williams,* 6 Ohio St.3d 281, 288, 452 N.E.2d 1323 (1983). A "ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary * * *so as to constitute an abuse of discretion." *Nields, supra*; *State v. Tyler,* 50 Ohio St.3d 24, 31, 553 N.E.2d 576, 587 (1990). Accord, *Williams,* 79 Ohio St. 3d at 8, 679 N.E.2d at 654.

{¶28} "[Deference must be paid to the trial judge who sees and hears the juror." *Nields, supra* at *21, quoting *Wainright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844 (1985). A trial court has the opportunity to observe potential jurors and to assess their sincerity during voir dire. *Gibbs v. Zadikoff,* 1st Dist. Hamilton No. C-060869, 2007-Ohio-4883, ¶ 40. When applying the abuse of discretion standard, an appellate court is not free to substitute its judgment for that of the trial judge. *Berk v. Matthews,* 53 Ohio St.3d 161, 559 N.E.2d 1301, *169. (Internal citations omitted.).

B.  LEGAL ANALYSIS

{¶29} Appellant contends the trial court erred when it denied his motion to excuse Juror 4 (Frowine) and Juror 5 (Bentley) for cause. Appellant argues it was an abuse of discretion to determine Frowine's true state of mind was fair and impartial to Appellant. As to Bentley, Appellant argues Bentley was biased in favor of the prosecution's witnesses and against Appellant. Appellant concludes in light of the answers provided by

Frowine and Bentley in voir dire, the trial court abused its discretion when it believed the jurors would be impartial. Although, like the trial judge, we would have "leaned toward letting them off," we do not find an abuse of discretion.

{¶30} Currently, R.C. 2313.17(B) provides the following are challenges for good cause to prospective jurors: (9) "[T]hat the person discloses by the person's answers that the person cannot be a fair and impartial juror or the person will not follow the law as given to the person by the court." Furthermore, R.C. 2313.19(C) provides: "Each challenge listed in division (B) of this section shall be considered as a principal challenge, and its validity tried by the court." (Renumbered from R.C. 2313.42 and amended by the 129th General Assembly, File No. 81, HB 268, Sec.1, eff. 5/22/12.)

{¶31} R.C. 2945.25, challenges for cause, provides in pertinent part:

"A person called as a juror in a criminal case may be challenged for the following causes:

* * *

(B) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state: but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied from examination of the juror or other evidence, that he will render

an impartial verdict according to the law and the evidence submitted to the jury at trial;…" See also, Crim.R. 24(C)(9).

**{¶32}** The purpose of questioning prospective jurors is to determine whether they can render a fair and impartial verdict. *Persohn, supra,* at ¶ 9; *Lakewood v. Town,* 106 Ohio App.3d 521, 525, 666 N.E.2d 599 (8th Dist. 1995); see, also, *State v. Duerr,* 8 Ohio App.3d 404, 457 N.E.2d 843 (1st Dist. 1982).

**{¶33}** The voir dire of potential jurors 4 and 5 was lengthy. We have omitted transcribing much of it in our analysis.  However, voir dire was conducted as follows, in relevant part:

Mr. Apel:    Anything about any of those incidents that would mean that you couldn't sit and be a fair and impartial juror in this case?

Juror 4:      (Mr. Frowine) The employment of being in D.R.C., probably, yes.

Mr. Apel:    Okay.  I guess what I'm asking you is, and I'll ask everybody several times as we go along here, can you listen to the evidence that's presented from the witness stand in this case and judge the case solely on that evidence?

Juror 4:      Yes, I can, but - -

Mr. Apel:    In other words, give- - give both sides a fair and impartial

- -

Juror 4:      Yes, I can, but like I was saying, again, past state employed with the prison.

Mr. Apel:    Yeah.

Juror 4:     You know, I might be a little prejudice.

Mr. Apel:    Okay. And I guess that's the- - the reason we're asking that. And I appreciate your- - your frank answers. That's why we're asking the questions here. You're going to be instructed, all of you as a jury, are going to be instructed that the only matters that you consider in this case come from that witness stand. Now as you're pointing out, Mr. Frowine, that's an easy thing to say, it's a whole lot harder to do for all of us, because we all have these certain predispositions. But you're going to take an oath that as jurors that you will only consider what comes out of this witness stand and nothing else. In other words, put everything else aside as you address this particular case. And that's only fair for both sides. Can you do that, Mr. Frowine?

Juror 4:     I'll do my best.

* * *

Juror 5:     (Mr. Bentley) I spent four months in (inaudible) with the Marines.

Mr. Apel:    Um. hmm.

Juror 5:     I hold them to a very high standard.

Mr. Apel     Yeah.

Juror 5:     I'm proud of them and I hold them to a high standard. That's all I can say. * * *

Mr. Apel:    Whoa. The question, Mr. Bentley, is even though you may hold them to a higher standard, you said you hold- - held them to a high standard, not a higher standard. Okay. Let me take that back. Even in that situation, can you listen to the evidence that comes from the witness stand and judge the case solely on that?

Juror 5:     I would like to think I would, but the whole time I'm thinking, no, a Marine should have - - should have better control.

Mr. Apel:     Sure.  Now this is kind of a two edged sword, because the victim, of course, is female, and there will be females on this jury. And we're going to ask them, are they going to hold a female to a higher standard.  You know, there's alcohol involved in this case and so forth.  So we're going to ask the same questions.  We're going to ask each one of you to listen to the evidence that comes from that witness stand and judge the case on that and nothing else.  And when I say nothing else, I mean other experiences that you've had to the extent that they reflect upon the facts of this case, things that you think.  Things that you find out. * * *Can you listen to the case as it comes from the witness stand and judge it on that alone, Mr. Bentley?

Juror 5:      I would love to think that I could, but there's something in the back of my head telling me right now, a Marine should have better control.

* * *

Juror 5:      I can listen and be fair.

After further questioning of other jurors by the State, Appellant's counsel

began.  These exchanges are particular to jurors 4 and 5:

Mr. Nash:     - - I wanted to talk to you.  It's been awhile since I've seen you. * * * All right. In case you guys didn't pick up, Mr. Frowine used to work at S.O.C.F.  And you expressed some concern. I know in your questionnaire you know law enforcement, and I don't know if the extent of your knowledge of law enforcement would have been Trooper Ball out at S.O.C.F. or who replaced him or just your contact from the institution with folks or if it goes beyond that.

Juror 4:      It goes beyond that.  I was also a Special Deputy under John Hull.

Mr. Nash:     Oh, he used to be a bailiff here.

Juror 4:      (Inaudible).

Mr. Nash:     Okay.

Juror 4:       Yes.

Mr. Nash:    Okay. All right, you know Detective Conkel?

Juror 4:       Yes.

Mr. Nash:    All right.  And she's going to testify in this case, and when she testifies, I – I don't know what she's going to say, exactly, but you understand my role as a Defense attorney is to make sure what she's saying is accurate, make sure there's no holes there.

Juror 4:       Correct.

Mr. Nash:    And as a juror you will eventually be asked to weigh her credibility.  Now the fact that you know her personally and prior to coming here, will that have any bearing on your decision making?

Juror 4:       I know Detective Conkel would do her best, her ability on the job.

Mr. Nash:    Okay.  So is it fair to say then that as you come into the courtroom, and this is all right no matter what your answer is, but is it fair to say that as you come into this courtroom you have some predispose- -predisposition as to her honesty?

Juror 4:       Correct.

Mr. Nash:    Okay. And is it also fair to say that that predisposed belief you have of her honesty couldn't be attacked?  I couldn't change your mind?

Juror 4:       More than likely, no.

* * *

Juror 5:       (Mr. Bentley) I know George Antonaris, works for the Sheriff's Department.

Mr. Nash:    Yeah.

Juror 5:       My son is a deputy sheriff in North Carolina.

Mr. Nash:    Okay.

Juror 5:       I was a police- I was a fire- - a fireman for the city of Durham, and I know that wherever I go to a scene I make a report, its chronological, it's factual.

* * *

Mr. Nash:    Okay.  All right.  So the same from your - - or the same question for you, and it's natural if your answer's yes, but as you come into this courtroom and if seated by- - as a juror, is it safe to say that you have already decided who you're going to believe or maybe who you may not believe?

Juror 5:       Probably.[4]

{¶34}  After further questioning, the trial court asked if the jurors would be passed for cause.  Appellant's counsel asked to approach for a bench conference.  Appellant requested that Bentley, Frowine, and Sharp be dismissed for cause.  The court allowed the State to further voir dire them before defense counsel would be allowed to challenge them for cause.  At this point, this exchange took place:

Mr. Apel:    Now if you were to take an oath and – and you would be directed and under oath to judge the case solely on what comes from the witness stand, - -

Juror 5:       (Mr. Bentley) I - - I - -

---

[4] At this point, Mr. Nash also discussed the fact that Appellant had been mentioned in the news, that he had been stationed in Okinawa, Japan and was on his way to Japan when he was arrested in California.  Mr. Bentley indicated he had heard the report and found the report inferred Appellant was "trying to escape" to Japan.  Mr. Bentley further indicated he now knew Appellant was just reporting for duty.

Mr. Apel:    Would you follow that instruction and that oath?

Juror 5:    I would - - I would -- - I would follow the oath, but I'm telling you right now I don't feel good about it.

*  * *

Mr. Apel:    What if you - - what if you listen to that evidence and you said, well, gee, they made a mistake here, could you act on that?

Juror 5:    Yeah, if they made a mistake.  If it was proven to me.

Mr. Apel:    Yeah. Or the evidence doesn't turn out like you think it will right now.

Juror 5:    If it- - if it is proven beyond, I guess, what - - what we said, beyond a reasonable doubt, you know, I - -I suppose I could be persuaded, but - -

Mr. Apel:    Now what- - what - - maybe we got that turned around there.  What happens if - - if it's not proven beyond a reasonable doubt, there's something missing from the State's case, for example, one of the elements of the offense, can you then say, well, gee, the State didn't prove its case?  As much as I like you guys over there, the State didn't prove its case.  Can you do that?

Juror 5:    Yeah.

Mr. Apel:    Okay.  So you're not going to say, even though the State doesn't prove its case, I'm going to vote guilty?  I'm going to vote on what I heard from the witness stand?

Juror 5:    Yes.

Mr. Apel:    Okay.  And can you be fair and impartial about that?

Juror 5:    I hope so.

Mr. Apel:    Okay. Can you try to?

Juror 5:      Yes.

* * *

Mr. Apel:    The same thing to you.  Excuse me.  When we talked earlier you mentioned that you thought you could be fair and impartial or you would try.

Juror 4:      (Mr. Frowine) Yes, sir.

Mr. Apel:    Okay.  And it's the same- - same concept here, and that's why I've asked a thousand times, can you listen to the evidence that comes from the witness stand and judge it based upon that?

Juror 4:      Correct.

Mr. Apel:    Okay.  Can you do that?

Juror 4:      To the best of my ability.

Mr. Apel:    Okay.  And like in the discussion with Mr. Bentley, if you find that the State doesn't prove its case beyond a reasonable doubt, that one of the elements of the offense is missing, can you vote not guilty?

Juror 4:      Yes, sir.

Mr. Apel:    Sorry, folks, we like you and all that.  I mean, we like for people to like us.  We don't like to get laughed out of court, but we expect you to judge the evidence that comes from the witness stand.

Juror 4:      Correct.

Mr. Apel:    Okay.  Can you do that?

Juror 4:      To best of my ability.

Mr. Apel:    Fairly and impartially?

Juror 4:      Yes. * * *

{¶35}  After further questioning of juror 11, the court asked counsel to approach.  The court allowed defense counsel one more time to voir dire the jurors, stating:  "But Mr. Apel has got them to say - - all say they can be fair and impartial, but under the circumstances I think you're entitled to more questioning.  Okay."  Defense counsel again questioned Jurors 4 and 5.  At this point, the trial court asked for counsel to approach and stated he was "leaning" to letting all three off.  This dialogue took place:

Mr. Apel:    I didn't say anything. I just asked them questions.  They all said they could be fair and impartial.

The Court:   Well, - -

Mr. Apel:    Now they also said they had certain predispositions.

 * * *

The Court:   And Mr. Bentley, he believes that anything that comes out of Jodi's [Detective Conkel's] mouth has to be absolute truth. You're supposed to judge people based upon the credibility.

Mr. Apel:    Well, and that's what he said he could do.

The Court:   No.

Mr. Apel:    That- - and - - my concern is, that we can lead them around to saying - - they said they can be fair and impartial.

The Court:   They have.

Ms. Hutchinson:    They also said if we didn't prove our case they would find him not guilty.

 * * *

Ms. Hutchinson:    But they've already agreed that we carry the burden.

Mr. Apel:    Yeah. Yeah. Sure.

Ms. Hutchinson:    And they've all said that if we don't prove our case they will find him not guilty.

Mr. Apel:    Yeah.

The Court:   Okay.

Ms. Hutchinson:    I don't know what else you can ask for.

{¶36} After the bench conference was concluded, the trial court excused juror 11. The court then inquired of jurors Bentley and Frowine that they both said they could be fair and impartial. Their responses were inaudible and the court indicated they were shaking their heads to the affirmative, to which they each responded "Yes, sir." Questioning by the attorneys resumed and defense counsel later used two peremptory challenges to excuse Mr. Frowine and Mr. Bentley. The jury was later impaneled. Attorney Nash later asked it be put on the record that he had to exercise 2 peremptory challenges that were his since they were challenged for cause and not excused by the court.

{¶37} Generally, the denial of a challenge for cause does not violate a defendant's constitutional rights. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 182. See *Ross v. Oklahoma,* 487 U.S.

81, 88-89, 108 S. Ct.2273 (1988).  In *Johnson,* the Supreme Court of Ohio noted since Johnson exhausted his peremptory challenges, the court would consider the merits of his claim. *Johnson, supra.*  See *State v. Group,* 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 61; *State v. Cornwell,* 86 Ohio St.3d 560, 564, 715 N.E.2d 1144 (1999).

{¶38}  In *Johnson,* a prospective juror disclosed on voir dire that in 1978, his sister had been charged with a crime similar to the allegations in *Johnson*  When asked if his background would bias him in favor of either party, the prospective juror stated: "If I had to say I probably would be for the State of Ohio. * * * I feel I would try to be fair but I don't know * * * that I could be completely fair."  Yet, in response to another question, the juror stated:  "I will follow the law.  Whatever the Judge tells me I will do my very best to follow it."   When the defense challenged this juror for cause, the trial court overruled the challenge noting the juror had raised the issue himself and had been "forthright in his answers."  The Supreme Court held that the record supported the court's decision.  The Court wrote at ¶ 187:

> "Prospective jurors represent a cross section of the community, and their education and experience vary widely.  Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand.  Jurors cannot be expected invariably to express themselves carefully or even consistently.  Every trial judge understands this, and under our system it is the judge

who is best situated to determine competency to serve impartially." *Patton v. Yount,* 467 U.S. 1025, 1039, 104 S.Ct. 2885 (1984).

**{¶39}** Similarly, the above exchanges illustrate that Juror 4, Frowine, was quite frank about his past employment in law enforcement and his predisposition to believe Detective Conkel would be an honest and credible witness. Likewise, Juror 5, Bentley, was also forthcoming in emphasizing that he had background experience with the Marines and he held a Marine to a "higher standard." In addition, Bentley, volunteered that his son was a deputy sheriff in North Carolina and he carried preconceived favorable notions of how officers prepare their reports and the accuracy of an officer's report.

**{¶40}** However, Juror 4 stated "to the best of [his] ability," he could listen to the evidence from the witness stand and judge the case based upon the evidence. Juror 5 also stated he could vote on the case based on what he heard from the witness stand. When asked if he could be fair and impartial, he answered "I hope so." Although the jurors responses, read from a cold transcript, seem hesitant, both jurors did also indicate that if the state did not prove its case beyond a reasonable doubt, if one of the elements of the offense was missing, they could vote "not guilty."

**{¶41}** The trial court had the opportunity to observe the demeanor of both prospective jurors and evaluate firsthand their sincerity in responding to the questions. The jurors both indicated they understood the burden of proof was on the State and the prosecution would have to prove all elements of the case beyond a reasonable doubt. Based on the standard of review, we find the trial court did not abuse its discretion in failing to excuse Jurors 4 and 5 for cause. As such, we overrule the assignment of error and affirm the judgment of the trial court.

## ASSIGNMENT OF ERROR THREE

### A. STANDARD OF REVIEW

**{¶42}** R.C. 2953.08(G)(2) specifies that an appellate court may reduce, increase, modify, vacate and remand a felony sentence if the court clearly and convincingly finds either that "the record does not support the sentencing court's findings" under the specific statutory provisions or "the sentence is otherwise contrary to law." *State v. Brewer,* 11 N.E.3d 317, 2014-Ohio-1903.

### B. LEGAL ANALYSIS

**{¶43}** Appellant contends the trial court failed to consider his military background and record, pursuant to R.C. 2929.12(F), when imposing the sentence. After the verdict was rendered, Appellant's counsel stated:

"* * *I just want to remind the Court that in March of this year
the legislature added consideration in the sentencing statute
2929.12(F), that a Court is to consider an offenders military
background and record when imposing sentence. We would
ask for a P.S. I. just to get that background."[5]

In response, the trial court stated: "I know he doesn't have any record, Mr.

Nash. However, this is a very serious, serious charge." Appellant points out

subsection (F), enacted on March 22, 2013, mandates the trial court to

determine whether the offender has an emotional, mental, or physical

condition traceable to the offender's service in the military, that is a

contributing factor in the commission of the offense. The transcript of the

sentencing and the journal entry do not contain reference to R.C. 2929.12(F).

Appellant argues this is proof the trial court considered only R.C.

2929.11(A),(B), and (C), R.C. 2929.12(B), (C), (D), and (E), and R.C.

2929.13(B) when imposing sentence. For the reasons which follow, we

disagree with Appellant.

{¶44} R.C. 2929.12, seriousness of crime and recidivism factors,

provides:

"(A) Unless otherwise required by section 2929.13 or 2929.14
of the Revised Code, a court that imposes sentence under this
chapter upon an offender for a felony has the discretion to
determine the most effective way to comply with the purposes
and principles of sentencing set forth in 2929.11 of the Revised

---

[5] Crim.R. 32.2 provides that a presentence investigation (P.S.I.) report shall be prepared prior to granting
felony probation. However, a P.S.I. is not mandatory in every circumstance. *State v. Cyrus,* 64 Ohio St.3d
164, 586 N.E.2d 94 (1992).

Code. In exercising that discretion, the court shall consider the factors set forth in division (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

* * *

(F) The sentencing court shall consider the offender's military service record and whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses."

{¶45} While the trial court is required to consider the R.C. 2929.12 factors, "the court is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12.)' " *State v. Latimer,* 11th Dist. Portage No. 2011-P-0089, 2012-Ohio-3845, ¶ 18, quoting *State v. Webb*, 11th Dist. Lake No.2003-L-078, 2004-Ohio-4198, ¶ 10, quoting *State v. Arnett,* 88 Ohio St.3d 208, 215, 724 N.E.2d 793, (2000). The Ohio Supreme Court in *State v. Adams,* 37 Ohio St.3d 295, 525 N.E.2d 1361, (1988), held: "[a]silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12." *Latimer, supra,* quoting *Adams*, paragraph three of the syllabus. Moreover, in *State v. Cyrus,* 63

Ohio St.3d 164 (1992), the Ohio Supreme Court held that the burden is on the defendant to present evidence to rebut the presumption that the court considered the sentencing criteria. *Latimer, supra*; *Cyrus*, at 166.

{¶46} In *State v. Cave,* 2nd Dist. Clark No. 09-CA-6, 2010-Ohio-1237, ¶ 10, the appellate court held Cave's sentence was not clearly and convincingly contrary to law merely because the trial court failed to specifically cite either [R.C. 2929.11 and R.C. 2929.12] during the sentencing hearing. See, e.g., *State v. Hatfield,* 2nd Dist. Champaign No. 2006CA16, 2006-Ohio-7090, ¶ 9, citing *Schenley v. Kauth,* 160 Ohio St.109, 111, 113 N.E.2 625 (1953). The *Cave* court further observed, "even if there is no specific mention of those statutes in the record, 'it is presumed that the trial court gave proper consideration to those statutes.' " *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at fn.4.

{¶47} Here, Appellant did not meet his burden in demonstrating the trial court's failure to consider R.C. 2929.12(F). Appellant was convicted of rape, R.C. 2907.02(A)(2), a felony of the first degree, and unlawful sexual conduct with a minor, R.C. 2907.04(A)/(B)(1), a felony of the fourth degree. At sentencing, defense counsel requested that the charges be merged for sentencing. The state then elected to proceed on the rape charge. The sentence range for a first degree felony is 3 to 11 years. R.C. 2929.14(A)(1).

However, because Appellant was convicted of rape, he was subject to a prison term of not less than 5 years. R.C. 2907.02(B).

{¶48} At trial, Appellant testified on his own behalf. He testified he was employed by the United States Marine Corp, as a corporal, and had been in the Marines nearly four years. He testified as to his basic training and his ultimate deployment to Afghanistan.

{¶49} At sentencing, defense counsel argued that Appellant was a productive citizen prior to the incident and requested the minimum mandatory sentence. The assistant prosecutor requested a mid to upper range of sentence in the "neighborhood of nine years." The prosecutor stated:

> "It- - we've talked about and he testified that he was in the Marine Corp, and the Court is to consider his military service. And- - what we've learned about it, that he's been in less than four years. He's due to get out in October. We all know that the Marine Corp's processing him out at the moment. And that he won't be in until December- - or until October, he'll be out as a result of this matter here."

{¶50} The trial court was not required to obtain a P.S.I. Neither Appellant or his counsel offered any further fact at sentencing in the nature of an emotional, mental, or physical condition traceable to Appellant's military service and a contributing factor to Appellant's conduct on the date of the incident. The trial court was well aware of Appellant's military

service and that he had been deployed, specifically to Afghanistan for nine months. While the trial court did not enumerate all of the factors on the record, it was not required to do so. And simply because the trial court did not enumerate R.C. 2929.12(F) on the record, does not also mean the trial court did not consider Appellant's service and deployment. The trial court's statement: "I know he doesn't have any record, Mr. Nash. However, this is a very serious, serious charge," does not, on its face, necessarily suggest that the trial court did not consider the military background. The trial court could have sentenced Appellant to the maximum sentence of 11 years but instead ordered a sentence of eight years, despite the prosecution's request for nine years. This sentence could mean the trial court did, in fact, consider the military background in its decision to impose a sentence less than the maximum and also less than the prosecution's request based on the evidence of military service. For these reasons, we find the trial court did not impose a sentence which is clearly and convincingly contrary to law. As such, we overrule the third assignment of error and affirm the judgment of the trial court.

### ASSIGNMENT OF ERROR FOUR

### A. STANDARD OF REVIEW

**{¶51}** "Generally, a decision on a motion for a new trial is within the discretion of the trial court. " *State v.Ogle*, 4th Dist. Hocking No. 13CA9, 2013-Ohio-3770, ¶ 9, quoting *State v. Lusher,* 982 N.E.2d 1290, 2012-Ohio-5526, ¶ 25, citing *State v. Ward,* 4th Dist. Meigs No. 05CA13, 2007-Ohio-2531, ¶ 41, citing *State v. Schiebel,* 55 Ohio St.3d 71, 564 N.E.254 (1990), paragraph one of the syllabus.  Accordingly, we will not reverse a trial court's decision on a motion for a new trial absent an abuse of discretion. *Ogle, supra,* citing *State v. Nichols*, 4th Dist. Adams No. 11CA912, 2012-Ohio-1608, ¶ 61.

**{¶52}** In this matter, Appellant did not object to the prosecutor's Alleged offensive remarks during closing.  Therefore, we review the alleged improper arguments under a "plain error" standard of review.  For a reviewing court to find plain error: 1.) there must be an error, i.e., "a deviation from a legal rule", 2.) the error must be plain, i.e. "an 'obvious' defect in the trial court proceedings"; and 3.) the error must have affected "substantial rights," i.e., it must have affected the outcome of the proceedings. *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Williams,* 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 19. Furthermore, the Supreme Court of Ohio has admonished courts that notice of plain error under Crim.R. 52(B) is to be taken "'with the utmost caution,

under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *Williams,* ¶ 19.

## B.  LEGAL ANALYSIS

{¶53}  Appellant contends the trial court erred when it denied Appellant's motion for a new trial based on prosecutorial misconduct. Under the final assignment of error, Appellant contends in the prosecutor's closing he specifically stated Appellant's attorney was misleading the jurors, accused counsel of removing the search warrant, and attacked counsel and defendant.  Appellant points out the prosecutor stated:  "Both of them over there, that's what their all about, shifting the blame on others, telling half-truths, and trying to put it back on a 15-year-old girl.  That is honorable, folks. I say that very sarcastically."

Crim.R. 33, new trial, provides as follows:

"(A) Grounds.  A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

(2)  Misconduct of the * * * prosecuting attorney….."

{¶54}  A review of the transcript reveals witness Detective Conkel was asked on cross-examination about her background and training in the investigation of sex crimes.  She was shown the search warrant in the matter

and identified it.  Detective Conkel was not questioned by defense counsel

about the warrant.  The State objected to the admission of the search warrant

as evidence and the judge then admitted the warrant as a defense exhibit.

{¶55}  In closing argument, defense counsel argued Detective Conkel

had only sought a search warrant for a charge of unlawful sexual conduct

with a minor because she had doubts about the issue of consent.  The State

objected to Appellant's argument because the warrant was, in fact, for both

charges.  The warrant exhibit indicates in relevant part:

> **FOR CERTAIN PROPERTY NAMELY**:  Specifically
> Saliva and/or blood.  All of which are in violation of Unlawful
> sexual conduct with a minor in violation of Ohio Revised Code
> section 2907.04.

> **WHICH IS EVIDENCE OF**:  Evidence of the commission of
> the crimes of Unlawful sexual conduct with a minor, which in
> violation of the Ohio Revised Code, Rape 2907.02 which is
> violation of the Ohio Revised Code.

{¶56}  Opposing counsel also clashed over text messages exchanged

between Appellant and P.E. on or about the time of the incident.  The State

contends that Appellant's counsel cross-examined P.E. about text messages

between Appellant and her, without identifying the texts before the witness

could respond to them.  At issue was a text which was cropped short and

ended with the sentence: "If I wasn't drunk, you know I wouldn't have done

that."  The full uncropped text was much longer, explained P.E.'s feelings

about the encounter, and could be construed as incriminating.  Later the entire uncropped text version was read into the record.

{¶57}  The assistant prosecutor brought the issue of the cropped texts to the Court's attention, advising that Appellant did not supply the entirety of the texts but only the cropped ones, and that this was not done until the Friday before trial.  On cross-examination, Appellant admitted he had given half of one of the text messages, seemingly damaging to P.E. and not forwarded the rest to his attorney.  Appellant also indicated he gave his cell phone to his lawyer with the messages intact and his attorney selected the messages to be used at trial.  During trial, the jury heard extensive testimony and argument about the text messages.  The State never hid its contention that Appellant and/or his counsel had intentionally cropped the texts to mislead the jury.  A review of the transcript at pages 496-503 reveals a heated bench conference regarding discovery violations and the cropped text messages did take place.  At one point, the trial court admonished defense counsel that "[a]s an officer of the court, you have duty and obligation to give the entire thing, not just parts that are good for you."  The trial court later ruled "I want the entire text brought in."

{¶58}  The State argued in its response to the motion for new trial, and on appeal, that the State's comments addressed the status of the

evidence in the case.  Appellant contends that disparaging remarks about counsel are never proper.  For several reasons, we find the trial court did not err in overruling Appellant's motion for new trial based on prosecutorial misconduct.

{¶59}  "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *State v. Marcum*, 4th Dist. Gallia No. 12CA6, 2013-Ohio-5333,¶ 31, quoting *State v. Purdin,* 4th Dist. Adams No. 12CA944, 2013-Ohio-22, ¶ 31, quoting *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 36, citing *State v. Smith,* 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45, in turn citing *State v. Smith,* 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).  "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.' " *Marcum, supra*; *Purdin, supra,* quoting *State v. Givens,* 4th Dist. Washington No. 07CA19, 2008-Ohio-1202, ¶ 28, quoting *State v. Gest,* 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995).  Accord, *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987).  "Prosecutorial misconduct constitutes reversible error only in rare instances." *Marcum, supra*; *Purdin, supra,* quoting *State v. Edgington*, 4th Dist. Ross No. 05CA2866, 2006-Ohio-3712, ¶ 18, citing *State v. Keenan,* 66 Ohio St.3d

402, 406, 613 N.E.2d 203 (1993). The "touchstone analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an 'error free, perfect trial.' " *Marcum, supra*; *Purdin, supra*, quoting *Leonard* at ¶ 36, quoting *Gest* at 257, 670 N.E.2d 536.

{¶60} "Prosecutorial misconduct rises to plain error only if it is clear that a defendant would not have been convicted in the absence of the improper comments." *Marcum, supra*, at ¶ 38; *Purdin, supra*, at ¶ 39, quoting *State v. Keeley,* 4th Dist. No. 11CA5-2012-Ohio-3564, ¶ 28, citing *State v. Conley,* 4th Dist. Pike No. 08CA784, 2009-Ohio-1848; *State v. Olvera-Guillen,* 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 36.

{¶61} In general, prosecutors are given considerable latitude in opening statements and closing arguments. *Persohn, supra,* at ¶ 79, citing *State v. Ballew,* 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996). Additionally, both parties are entitled to latitude in responding to the arguments made by opposing counsel. *Id.* In closing argument, a prosecutor may comment on " 'what the evidence has shown and what reasonable inferences may be drawn therefrom.'"" *Persohn, supra,* quoting *State v. Lott,* 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v.*

*Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). In determining the impact of the alleged improper remarks, the closing argument must be reviewed in its entirety. *Persohn, supra,* citing *State v. Treesh,* 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001); *State v. Hill,* 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996).

{¶62} The prosecutor's comments, in their entire context, were as follows:

> "Why, why he asks, why would he admit to having sex if he wasn't being truthful? Well, folks, let me tell you, if there's one thing that's established in this case, is that he had vaginal intercourse with [P.E.]. Now how do we know that? How do we know that? The DNA comparison, 1 and 800 quintillion, or whatever it was, more than the population of the world. We say one thing definitely; he had sex with [P.E.] So why would he say, oh, yeah, we - - I did have sex? He doesn't have anything else to say. What's he got to say now is, how else do I get out of it? How else do I get out of this predicament? That's what he's all about. That's what he's all about. Both of them over, that's what their all about, shifting the blame on others, telling half-truths, and trying to put it back on a 15 year old girl. That is honorable, folks. I say that very sarcastically."

{¶63} Looking at the prosecutor's remarks in their entirety, we cannot say the prosecutor's remarks rose to the level of plain error. In other words, we do not find Appellant was deprived of a fair trial because of the remarks.

{¶64} As to the search warrant issue, the warrant mentions the crime

of unlawful sexual conduct with a minor in the first section and mentions

both crimes of unlawful sexual conduct with a minor and rape in the second

section. We can see defense counsel's strategy. We also see how the State's

interpretation of defense counsel's argument as misleading may be

considered fair comment upon the defense exhibit and the defense strategy.

Given the heated discussions in bench conference regarding the provision of

text messages, we also find the prosecutor's comments fair comment on the

evidence and defense strategies.

{¶65} We acknowledge Appellant's argument that the prosecutor's

remarks were disparaging to counsel. Indeed, the prosecution must avoid

insinuations and assertions which are calculated to mislead the jury. *State v.*

*Smith,* 14 Ohio St.3d 13, 470 N.E.2d 883, (1984), ¶ 5; *Berger v. United*

*States*, 295 U.S. 78, 55 S.Ct. 629 (1935). In *Smith,* the assistant prosecutor

referred to defense evidence as "lies," "garbage," "garbage lies," "[a]smoke

screen," and a "well-conceived and well-rehearsed lie." In addition, the

assistant prosecutor intimated that defense counsel had suborned perjury by

manufacturing, conceiving and fashioning lies to be presented in court. The

Supreme Court of Ohio, in *Smith,* found "[t]here was no evidence to

substantiate [the]allegations." The Court further found the conduct to be

well-beyond the normal latitude allowed in closing arguments.

{¶66} That is not the case here because there was evidence presented to substantiate the victim's allegation of rape. The prosecutor remarked that "they're about half-truths." Unfortunately, the transcript reveals the bench conference was about cropped text messages, not provided until the eve of trial and not in their entirety. Despite the fact the conference was held out of the jury's hearing, this would seemingly be a "half-truth." The defense's characterization of the contents of the search warrant would also seem a sort of "half-truth." The prosecutor's remark about "shifting the blame onto a 15-year-old girl" reflects fair comment about the defense's trial strategy and defense characterization of the evidence. As such, we do not find the prosecutor's comments deprived Appellant of a fair trial.

{¶67} Moreover, the trial court advised the jury, both in opening and closing instructions, that the statements of counsel are not evidence. "A presumption exists that the jury has followed the instructions given to it by the trial court." *State v. Ogle,* 4th Dist. Hocking Nos. 11CA29, 11CA32, 12CA2, 12CA12, 12CA19, 2013-Ohio-3420, ¶ 74; *State v. Jones,* 135 Ohio St.3d 10, 2012-Ohio-5647, 984 N.E.2d 948 citing *State v. Murphy,* 65 Ohio St.3d 554, 605 N.E.2d 884 (1992).

{¶68} Furthermore, the evidence in the trial required the jurors to make a "he said/she said" determination, and in doing so, judge the

witnesses' credibility. The jurors were instructed on the legal definition of credibility and the tests, utilized in their everyday lives, upon which they might rely. The trial court acknowledged credibility was at issue in the entry denying the motion when he wrote:

> "In this case, both parties acknowledged that the Defendant had intercourse with the victim. The jury heard the conflicting testimony. The court instructed the jury on credibility as well as other matters. The jury deliberated on the evidence and found the defendant guilty. No amount of argument changes the fact that the defendant was convicted on the facts presented to the jury and not the argument of counsel."

{¶69} The transcript revealed Appellant's testimony that he referred to P.E. as his "step-sister." Their parents had been together since 2001 and married in 2008. Appellant and P.E. lived in the same household in 2009. Appellant testified he was a 2009 high school graduate. He also testified about his basic training and his military service in Afghanistan.

{¶70} On the night in question, Appellant testified, P.E. invited him and others to the house to play a drinking game. At some point during the game, P.E. became ill and vomited off the porch. Appellant assisted P.E. when she got sick. He denied being flirtatious and testified he was comforting her. He took her to the bathroom, gave her some crackers to eat, and later assisted her to her bedroom.

{¶71}  Appellant testified he went back to check on P.E. sometime later, and she was awake.  Appellant testified P.E. began "groping [his]private region" and performed oral sex on him.  Appellant testified everything escalated and she pulled him closer.  He testified P.E. removed her pants and they had intercourse.  He testified she asked him to go "deeper."  Then she began "whimpering."  Appellant testified they talked a few minutes and he felt embarrassed.  He told her not to tell their parents because he didn't know how to handle the situation.

{¶72}  On cross-examination, Appellant admitted they had vaginal intercourse.  He denied being close to P.E. as a "brother-sister" relationship. He testified he "received" oral sex, but later he resisted and pushed her away.  He testified P.E. "wouldn't stop."  Appellant admitted he engaged in foreplay.  He admitted he "gave in to a 15-year-old."

{¶73}  By contrast, P.E. testified she was 15 years old at the time of the incident, and Appellant was her step-brother whom she had known since she was three years old. Before the incident, she actually had referred to him as her "brother."  On the night of the incident, P.E., Appellant, and others were playing a drinking game.  P.E. was wearing jeans and a tee-shirt.  She had played the drinking game before.  On that particular night, Appellant was acting "flirty" with her, and it "just didn't seem right."  Yet, Appellant

testified, because Appellant was her brother, she "didn't think she had anything to worry about."   However, later on in the evening, she told the other guys present that she "wasn't feeling right" and to "not let Tyler do anything" to her.

{¶74}  P.E. got sick that night, vomited, and felt numb.  Someone helped her to bed.  After she went to bed, Appellant came into her room, climbed on top of her, removed her clothing, and raped her.  She awoke to a feeling of pressure and pain.  P.E. testified she could not push him off her and she didn't even remember talking.

{¶75}  On cross-examination, P.E. admitted she had been texting with Appellant during the evening, before the drinking game started.  She admitted she texted him to hurry up and get home, bring cups, and bring friends for the drinking game.  She admitted she had drunk alcohol with Tyler, and others, in the past.  She admitted she sent him a text message that said "If [I] were not drunk, you know I wouldn't have done that."  P.E. testified Appellant took advantage of her.

{¶76}  On redirect, P.E. read for the jury, the entire text message which included the statement "If I were not drunk, you know I wouldn't have done that."  She denied seducing her brother.

**{¶77}** A jury sitting as trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it. *State v. Grube,* 987 N.E.2d 287, 2013-Ohio-692 (4th Dist.). See *State v. Long,* 127 Ohio App.3d 328, 335, 713 N.E.2d 1 (4th Dist. 1998); *State v. Nichols,* 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (4th Dist. 1993). A jury is in the best position to view the witnesses and observe the witnesses' demeanor, gestures, and voice inflections and to use these observations to weigh credibility. *Grube, supra*. See *Myers v. Garson*, 66 Ohio St.3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Appellate courts should not second-guess generally juries on matters of weight and credibility. *Grube, supra.* See *State v. Vance,* 4th Dist. Athens No. 03CA27, 2004-Ohio-5379, ¶ 10.

**{¶78}** Based on the above, we do not find the prosecutor's remarks, although disparaging, rose to the level of plain error and deprived Appellant of a fair trial. The jurors here found P.E.'s version of the events to be more credible and we will not second-guess the jurors' determination. As such, we overrule Appellant's final assignment of error and affirm the judgment of the trial court.

                                                                **JUDGMENT AFFIRMED.**

Harsha, J., concurring:

{¶79} In his first assignment of error Fitzgerald claims that the trial court erred when it applied the incorrect legal standard when ruling on his request to enter a plea of not guilty by reason of insanity. In general, " '[a] court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum.' " *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 83, quoting *Schenley v. Kauth*, 160 Ohio St. 109, 113 N.E.2d 625 (1953), paragraph one of the syllabus. However, the trial court here employed the correct standard in its oral pronouncement at a pretrial. Moreover, both parties and the court made it clear that the issue before the court was NGRI, not competency. Therefore, the court's misstatement appears to be a scrivener's error, which the court should correct by a nunc pro tunc entry. Thus, I agree with the principal opinion that the error was harmless.

{¶80} But the principal opinion then addresses Fitzgerald's argument that the trial court abused its discretion by excluding records provided by him in support of his request to add his supplemental plea. Because this issue is not properly before us, I would not address it. "Appellate courts review assignments of error—we sustain or overrule assignments of error and not mere arguments." See State v. Harlow, 4th Dist. Washington No.

13CA29, 2014–Ohio–864, ¶ 10, and cases cited there; see also Keltz v.

Enchanted Hills Community Assn., 4th Dist. Highland No. 12CA11, 2014–

Ohio–866, ¶ 21, quoting State v. Gwinn, 196 Ohio App.3d 296, 2011–

Ohio–5457, 963 N.E.2d 212, ¶ 26 (4th Dist.) (" 'Appellate courts review

assignments of error, not mere arguments' ").

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.:  Concurs in Judgment and Opinion.
Harsha, J.:  Concurs in Judgment and Opinion with Opinion.

For the Court,

BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**